**APEX SMELTING COMPANY, Plaintiff, v. CORNELL, etc., Defendant.**

Common Pleas Court, Franklin County.

No. 184522.    Decided May 17, 1954.

Walter J. Mackey, Columbus, for plaintiff.

C. William O'Neill, Atty. Genl., John Hardwick, Asst. Atty. Genl., Columbus, for defendant.

**OPINION**

By REYNOLDS, J.

This case is before the court on appeal from the decision of the Administrator of the Bureau of Unemployment Compensation, denying appellant the right to enjoy the benefit of the merit rating of the National Smelting Company, a major portion of the business of that company having been taken over by appellant on January 2, 1948.

Prior thereto Apex Smelting Company secured an option from National Smelting Company of Cleveland, Ohio, to purchase all of the latter's plant and equipment, together with its good will, trade mark, trade name, etc.

At that time National Smelting Company was engaged in the business of smelting aluminum or aluminum alloys at a plant located at 6700 Grant Avenue in the City of Cleveland.

It also had been operating a plant on Diese Avenue for the production of magnesium alloys for the United States Government, but after VJ Day in 1945 this operation was materially lessened.

National Smelting Company did not own the buildings at the Diese Avenue plant, but instead leased the plant and much of the equipment from the United States Government under a rental agreement.

Since there was no longer a demand for the products of the Diese plant, Apex Smelting Company did not wish to become a party to any extension of the contract with the Government, and so in exercising its option with National Smelting Company, did so only as to the Grant Avenue plant After the acquisition of that plant it continued with the business of aluminum smelting, with virtually the same personnel theretofore used by National Smelting Company, with the exception of a small reduction of number made possible by improved methods of operation used by Apex.

In its report to the Bureau of Unemployment on the disposition of its business to Apex Smelting Company, the following statements were made:

"Is new owner taking over your entire business organization and assets? Answer: **No.**

"If answer is 'no' what per cent. of business is retained? Answer 7%."

During the year 1948, after the transfer of its aluminum business to Apex, National Smelting Company continued as an employer to make monthly payments to the Bureau, listing the number of its employees as follows:

| | |
|---|---|
| January, 1948 | 76 |
| February, 1948 | 68 |
| March, 1948 | 59 |
| April, 1948 | 56 |
| May, 1948 | 46 |
| June, 1948 | 42 |
| July, 1948 | 33 |
| August, 1948 | 33 |
| September, 1948 | 31 |
| October, 1948 | 32 |
| November, 1948 | 33 |
| December, 1948 | 34 |

And during that year it continued to receive the benefit of the merit rate of 0.4% which it had earned during the previous years of its experience with the Bureau in connection with both plants, and the number of employees as reported for the year 1948 would indicate that National Smelting Company must have carried on some active operation at the Diese plant.

On pure reasoning a strong argument can be made, and has been made by counsel for Apex, as to why, when it took over the Grant Avenue plant and continued its operation, as shown, that it should have the advantage of the merit rating earned by its predecessor.

The difficulty however with the argument is that the statutory provisions governing transfer controls.

The statute governing to wit §1345-4 (c) GC provides as follows:

"If an employer shall transfer his business or shall otherwise reorganize such business, the successor in interest is hereby required to assume the resources and liabilities of such employer's account, and to continue the payment of all contributions due under the Unemployment Compensation Act."

This statute was enacted in 1941, being an amendment to a former statute which then provided as follows:

"If any employer shall transfer his business in whole or in part or shall otherwise reorganize such business, the successor in interest is hereby required to assume (in proportion to the extent of such transfer, as determined by the commission) the resources and liabilities of such employer's account, and to continue the payment of all contributions due under this act."

For some reason, not readily apparent, the Legislature sought to make the change to the form first above quoted, which remained in effect during the times involved in the case here under consideration. In 1952 the legislature again amended

the statute, affecting transfers, said statute as amended providing as follows:

Sec. 1345-4 (c) (1) **D** GC.—"* * * If an employer acquires substantially all of the assets used in a trade or business of another employer, or a clearly segregable and identifiable portion of an employer's enterprise, and immediately after the acquisition employs in his trade or business substantially the same individuals who immediately prior to the acquisition were employed in the trade or business or in the separate unit of such trade or business of such predecessor employer, then, upon application to the administrator signed by the predecessor employer and the acquiring employer, the employer acquiring such enterprise shall be deemed the successor in interest. In the case of a transfer of a portion of an employer's enterprise, only that part of the experience with unemployment compensation and payrolls that is directly attributed to the segregated and identifiable part shall be transferred and used in computing the contribution rate of the successor employer or the next computation date. The administrator by regulation may prescribe procedures for effecting transfers of experience as provided for herein."

Had this amendment been in effect at the time Apex acquired the aluminum smelting business from National, it, of course, could have acquired the merit rating earned by that company in connection with the business transferred, but unfortunately this amendment was not enacted until long after the time here under consideration.

In the case of **Eiber Realty Company v. Dunifon, 84 Oh Ap 532,** the Court had under consideration a case, the facts of which were very similar to those in the instant case, and which arose at a time when the statute relating to transfers was the same as the time of the transfer here under consideration, the court held as follows:

"In order for an employer to transfer his business so that his successor in interest will acquire and assume the resources and liabilities of the former's account, including the merit rating earned by him, under the Unemployment Compensation Act, he must transfer the business in its entirety, and such rule is not changed by the fact that the employer, who has only one account with the Bureau of Unemployment Compensation, conducts two separate and different types of business."

In its opinion, after quoting the statute §1345-4 (c) 1 GC, the court said:

"We are of the opinion that the above statute requires that an employer, in order to transfer his business so that his successor in interest acquires and assumes the resources and li-

abilities of such employer's account, transfer the business in its entirety. The fact that they are two separate businesses and different types of business does not change the situation because he is considered as only one employer and to transfer the account so that one gets credit for the contributions paid on which the merit is based, it is necessary that he transfer all his business. The rate is determined from all the contributions he makes even though it be on different types of business. His rate is based upon the experience shown by all his activities. If he transfers only one of his businesses he still retains the merit rate, but the transferee, if he succeeds to only a part of the employer's business, has to take the new rate. Our conclusion on this interpretation of this section of the General Code is fortified by the fact that prior to October 1, 1941, the appellee would be entitled to the relief it is seeking here. This section then provided:

" 'If any employer shall transfer his business **in whole or in part** or shall otherwise reorganize such business, the successor in interest is hereby required to assume (in proportion to the extent of such transfer, as determined by the commission) the resources and liabilities of such employer's account, and to continue the payment of all contributions due under this act.' (Emphasis ours.)

"It will be noted that section provided for a partial transfer of an employer's business, which provision has now been eliminated. It must clearly be presumed that the Legislature intended to abolish a portion of a transfer of an employer's business when it struck out of the act the words 'in whole or in part.' Counsel for the administrator properly call our attention to the fact that, even though it so desired, the appellant could not establish a merit rate when a partial transfer of the business is made, as no separate record is required to be kept by the administrator for each separate business of an employer. The act considers the employer as conducting only one business even though it may consist of several independent units."

This decision was by our own Court of Appeals and is controlling on this court and while the conclusion reached seems harsh and inequitable, it must be regarded as the law.

In accordance with this decision this court concludes that the decision of the Administrator of the Bureau of Unemployment Compensation must be and the same is hereby affirmed.